[L. A. No. 15089.   In Bank.—April 17, 1935.]

CITY OF LONG BEACH (a Municipal Corporation), Petitioner, v. H. A. PAYNE, as County Auditor, etc., Respondent.

George W. Trammell, Jr., City Attorney, Harlan V. Boyer, Assistant City Attorney, and Henry D. Lawrence, Deputy City Attorney, for Petitioner.

Everett W. Mattoon, County Counsel, J. H. O'Connor, Assistant County Counsel, and Allard, Stead & Whyte for Respondent.

CURTIS, J.—The question involved in this proceeding is whether the county of Los Angeles can legally apply a portion of the money allocated to it from the "Motor Vehicle Fund" to the improvement and repair of certain canals in that certain tract or subdivision known as "Naples" and located within the City of Long Beach in said county of Los Angeles. No question is raised as to the right of said county

to expend money allocated to it from the motor vehicle fund in the repair and maintenance of an ordinary street or highway within the corporate limits of a city, but the contention of respondent is that money from the motor vehicle fund cannot be expended upon canals, as they do not constitute highways in the sense in which said term is usually understood and as it is used in the California Vehicle Act.

The canals in said tract were dedicated to public use by the owner thereof at least as early as the year 1909, and ever since said dedication have been open to the public and have been continuously used by the general public. There are two canals involved herein designated on the official map of said subdivision and known as "Rivo Alto Canal" and "Naples Canal". The first named is circular in form. Its diameter is some 1600 feet and it empties into Alamitos Bay. At the point where said canal empties into Alamitos Bay, Naples Canal takes its beginning and extends westerly through said subdivision and it also empties into Alamitos Bay. The two canals, therefore, communicate with Alamitos Bay and with each other. They are approximately 80 feet in width and on each side of these canals is a sidewalk and parkway area some 15 feet in width extending from the concrete retaining walls of the canals back to private property lines. Cement sidewalks have been built adjacent to the retaining walls of the canals, and this sidewalk and parkway area furnishes pedestrian ingress and egress to and from the residences in this tract of those whose property abuts on the two canals. These canals have fallen into disrepair, the retaining walls on either side of each canal have become cracked, and portions thereof have fallen into the canals. The ebb and flow of the waters of the canals have worked under portions of these broken retaining walls and have seriously undermined the adjacent sidewalks and parkways, causing the sidewalks to cave in and in many places causing injury to adjacent private property. The cracked and broken condition of the retaining walls along the sides of the canals seriously impairs the privilege of boating and swimming and other uses to which said canals are put by the public, and the broken condition of the sidewalks along this area is a constant menace to all persons residing in the community and to the general public using said walks.

On April 10, 1934, the city counsel of the city of Long Beach, pursuant to the provisions of the Improvement Act of 1911 (Stats. 1911, p. 730), and acts amendatory thereof, duly adopted a resolution and ordinance of intention to repair and improve said canals by rebuilding the retaining walls on either side thereof and making such other changes in their construction as will render them serviceable to the public. The changes proposed to be made would result not only in rebuilding the retaining walls on either side of the canals, but by such change the width of the canals would be diminished to 70 feet with a corresponding widening of the sidewalk and parkway area, making the latter 20 feet in width instead of the present width of 15 feet.

The federal government, under its employment relief program carried forward by the public works administration, has agreed to contribute toward said improvement not to exceed the sum of $88,700. The county of Los Angeles, by a four-fifths vote of its board of supervisors on November 19, 1934, ordered that an appropriation of $100,000 be made toward the payment of the cost of improving and rebuilding said canals, payable quarterly to the City of Long Beach from the "Good Roads Fund, 1934–35, Supervisorial District No. 1, Undistributed". Pursuant to this resolution the City of Long Beach on November 23, 1934, duly made demand on respondent H. A. Payne, County Auditor of the County of Los Angeles, for the first quarterly payment of said appropriation, to wit, the sum of $25,000. At the time of making said demand there was and now is in said fund an unexpended and unappropriated balance in excess of $25,000, and no such amount was on hand or on deposit in any other fund out of which said sum of $25,000 could have been paid. All moneys in said fund are moneys appropriated by the state of California to the county of Los Angeles from the "Motor Vehicle Fund", pursuant to the provisions of section 159 of the California Vehicle Act, and were collected by the state pursuant to said act. Said respondent refused to pay over or cause to be paid over unto the City of Long Beach said last-named sum of $25,000, or any sum whatever. Thereupon this proceeding was instituted in this court to compel said respondent auditor to comply with said order and resolution of the board of supervisors. The respondent has filed his answer and the matter is now before us upon

the petition and answer thereto and an agreed statement of facts.

Section 159 of the California Vehicle Act provides in part as follows:

"There is hereby created in the state treasury a fund which shall be known as the 'Motor Vehicle Fund'. The state treasurer shall deposit all money received by him from the division or otherwise under the provisions of this act into the motor vehicle fund.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"One-half of such 'net receipts' is hereby appropriated and shall be paid from the motor vehicle fund to the counties of this state in proportion to the number of vehicles registered in such counties as determined by the places of residence of the owners to whom the registration certificates are issued. All amounts paid under this section to the counties shall be deposited in the road funds of the several counties receiving the same and shall be expended by such counties exclusively in the construction, maintenance, improvement or repair of streets, roads, highways, bridges or culverts therein; provided that the board of supervisors of any county may in its discretion expend any portion of such sums so received by such county in the construction, maintenance, improvement or repair of streets, roads, highways, bridges or culverts within those incorporated cities therein the legislative bodies of which by ordinance or resolution authorize such work of construction, maintenance, improvement or repair." (Stats. 1933, pp. 2624, 2625.)

It will be noted that the section provides that boards of supervisors may expend money received by them from the motor vehicle fund "in the construction, maintenance, improvement or repair of streets, roads, highways, bridges or culverts within those incorporate cities therein the legislative bodies of which by ·ordinance or resolution authorize such work of construction, maintenance, improvement or repair". Is this language of the section sufficiently broad to include "canals"? It is obvious that the terms "streets", "roads", "bridges", and "culverts" cannot reasonably be construed or extended so as to include or apply to "canals". Can the same be said as to the term "highways"?

We find no definition of "highway" given in the California Vehicle Act. As near as that act comes to defining a

highway is to be found in the definition of a "public highway", which is defined to mean, "Every highway, road, street, etc." In other words, the act defines public highway as a highway, but makes no attempt to define "highway". Webster's New International Dictionary, second edition, recently issued by G. & C. Merriam Co., publishers, defines a highway as follows: "A main road or thoroughfare; hence a road or way open to the use of the public, including in the broadest sense of the term ways upon water as well as upon land." The definition given by Bouvier's Law Dictionary conveys the same meaning. It is in the following words: "The term highway is the generic term for all kinds of public ways, whether it be carriage-ways, bridle-ways, foot-ways, bridges, turnpike roads, railroads, canals, ferries or navigable rivers." In "Words and Phrases" among numerous definitions of the same general tenor we find the following: "The term, 'highway' is a generic term for all kinds of public ways, including county and township roads, railroads and tramways, bridges and ferries, canals and navigable rivers. In fact, every thoroughfare is a highway," citing *Southern Kansas Ry. Co.* v. *Oklahoma City*, 12 Okl. 82 [69 Pac. 1050, 1054]; *Union Pacific R. R.* v. *Colfax County Commrs.*, 4 Neb. 450, 456; *Board of Shelby County Commrs.* v. *Castetter*, 7 Ind. App. 309 [33 N. E. 986, 34 N. E. 687].

The principle announced in these authorities has been approved by this court in its recent decision involving the canals within a subdivision or tract known as "Venice of America", thereafter incorporated as the city of Venice and subsequently made a part of the city of Los Angeles. (*Wattson* v. *Eldridge*, 207 Cal. 314, 320, 321 [278 Pac. 236].) The canals in the Venice of America were laid out in much the same manner and for the same purpose as were those laid out in the Naples subdivision, although in the deed by the owner of the tract conveying to the city of Venice the canals and strips of land along each side of the several canals there was a reservation that "the premises herein conveyed shall be used by said second party and its successors solely and only for permanent waterways, and canals free to the public forever". No such reservation is contained in the certificate attached to the map of Naples in which said canals were dedicated to public use. After

the city of Venice became a part of the city of Los Angeles, the authorities of the latter city proposed to fill in these canals and convert them into public streets or highways. In passing upon the questioned right of the city of Los Angeles to make such a change, and in declaring the status of said canals, this court held as follows: "While the several intercommunicating canals constructed in and through 'Venice of America' were used as well for recreational purposes, they must of necessity, and because of the peculiar plan and construction of said city, be held to have been intended by the builder of that city to serve primarily as highways over which persons resident therein and the public generally might pass. In *Chicago etc. Ry.* v. *Minneapolis,* 232 U. S. 430, 442 [34 Sup. Ct. 400, 58 L. Ed. 671], the court concludes that an artificial waterway or canal 'is none the less a public highway, established to afford an appropriate place of public passage', and further along in its opinion quotes with approval the following: 'The way sought to be established . . . a canal or waterway, with walks along each side was clearly a public way, subject to the rules governing public ways.' There cannot, therefore, be any question but that a canal is a highway of a peculiar kind. (9 Cor. Jur. 1125, sec. 1.) The dedication of a highway to public use authorizes any ordinary use for highway purposes."

Counsel for respondent have cited decisions from other jurisdictions holding that in certain instances the term "highway" does not include a canal, but these authorities are out of line with the general trend of decisions upon the subject, and are in direct conflict with the decision of this court in the case of *Wattson* v. *Eldridge, supra.* ▇ We are therefore of the opinion that the term "highway" as generally used and understood is sufficiently comprehensive to include canals as an integral part of a highway system.

▇ Respondent, however, contends that as used in the California Vehicle Act the term "highway" is to be limited to a more restricted sense and that as so construed it is limited to ways of travel upon which motor vehicles may be used and operated. Numerous instances are cited where the term is used in the act which, if construed to mean a canal, would render the context of doubtful meaning, if not ludicrous. It may be conceded that the general purpose and

scheme of the California Vehicle Act is concerned primarily with highways upon which motor vehicles can be operated, which would, of course, exclude canals or waterways. But we find nothing in the act which compels the strict construction of the term "highways" contended for by respondent. It is a significant fact that originally section 159, subdivision c, giving boards of supervisors the authority to expend money apportioned to the counties from the motor vehicle fund for improvements within incorporated cities, limited such expenditures to the improvement of "roads, bridges or culverts", but after our decision in 1929 of the case of *Wattson* v. *Eldridge, supra,* in which we held that the term "highway" was sufficiently broad to include canals, the legislature in 1933 broadened the scope of the act so as to permit such expenditures to be made on "highways and streets", as well as upon "roads, bridges and culverts".

It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts. (*In re Nowak,* 184 Cal. 701, 705 [195 Pac. 402].) Applying this rule in the instant case, we think it but reasonable to assume that the legislature, when it enlarged the powers of boards of supervisors in the expenditure of money received from the Motor Vehicle Fund in incorporated cities, and expressly provided that such funds could be used in the improvement of highways therein, used the term advisedly and in the sense which had been given it by the decision of this court.

Respondent relies upon certain language to be found in the case of *Old Homestead Bakery, Inc.,* v. *Marsh,* 75 Cal. App. 247, 253, 255 [242 Pac. 749], upholding the constitutionality of that provision of the California Vehicle Act of 1923 authorizing the imposition of a fee of fifty dollars for the registration of electric motor vehicles intended for use in the transportation of passengers or property for hire upon the public highways of the state. While it was there held that the purpose of the legislature in exacting such a registration fee, as well as other license taxes on motor vehicles, was to raise funds with which the highways of the

state may be improved and kept in repair, no question was raised in that action as to the proper expenditure of that fund when raised. We find no intimation in that opinion that the funds raised under the California Vehicle Act must be used exclusively upon highways upon which motor vehicles may be operated. This is especially true since the act has been amended and in its present form, in our opinion, expressly authorizes the expenditures here involved. It follows from what we have said that the respondent auditor was not legally justified in refusing to draw his warrant in favor of the City of Long Beach, as requested and demanded by said city.

These views render it unnecessary for us to pass upon the applicability to the facts in this case of that certain act, often cited as the "Aid to Cities Act", and entitled, "An act authorizing counties to improve or assist in the improvement of streets lying in municipalities." (Stats. 1923, p. 123.) We are satisfied the board of supervisors of the county of Los Angeles have the authority under the California Vehicle Act to make the expenditures involved herein. It is therefore a matter of no consequence as to their authority under the "Aid to Cities Act".

Let the peremptory writ issue as prayed for.

Shenk, J., Preston, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.